UNITED STATES of America, Appellee,

v.

**Harry B. HELMSLEY, Leona M. Helmsley, Joseph V. Licari, and Frank J. Turco, Defendants,**

**Leona M. Helmsley, Defendant–Appellant.**

**No. 482, Docket 88–1391.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1988.

Decided Dec. 29, 1988.

James A. Bruton, Washington, D.C. (Williams & Connolly, Gerald A. Feffer, Washington, D.C., of counsel, Gallop, Dawson & Clayman, Charles E. Clayman, New York City, of counsel on the brief), for defendant-appellant.

Robert Hammel, Asst. U.S. Atty., Southern District of New York, (Rudolph W. Giuliani, U.S. Atty., Linda Imes, Asst. U.S. Atty., Southern District of New York, New York City, of counsel), for appellee.

Before VAN GRAAFEILAND, CARDAMONE and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge:

This is an appeal from an order denying a motion to dismiss an indictment that charges Leona M. Helmsley with a long litany of activities in which she allegedly promoted her own financial self-interest in violation of the law. The legal hurdle appellant faces is the finality rule, which she tried without success to surmount once before. Her present appeal is nothing more than a repackaged version of the first attempt, with the added request that—if this edition meets the same fate as the former one—we lower the legal hurdle. The finality rule limits appeals so that only those taken from a final judgment may be heard. It has been the notion of our law since its earliest days to avoid piece-meal interlocutory appeals because of the consequent delays they create. That rule has served long and well and this interlocutory appeal presents no reason for altering it. Hence,

appellant's claim must await final judgment after trial on the charges.

Appellant Helmsley appeals from an August 30, 1988 order of the United States District Court for the Southern District of New York (Walker, J.) denying her motion to dismiss an indictment filed against her, and also denying her motion for a pre-trial *Kastigar* hearing on her allegation that the government has abridged her Fifth Amendment rights. *See Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Appellant moved for an expedited appeal from the above order, to which the government consented, and the district court rescheduled her trial for January 23, 1989. This appeal was heard on October 18, 1988. We now dismiss it.

## I FACTS AND PROCEDURAL HISTORY

The 47–count indictment charges Leona M. Helmsley and her husband, Harry B. Helmsley, and two other officers of the Helmsley Corporations with using their control of a large group of real estate, hotels, insurance and related business over the period from June 1983 to October 1986, with conspiracy to defraud the United States and the Internal Revenue Service. In addition to conspiracy, the defendants are charged with tax evasion of approximately $1.2 million, filing false tax returns, mail fraud—involving an allegedly fraudulent use of corporate funds to pay for the renovation of "Dunnellen Hall" in Greenwich, Connecticut—and extortion. The last charge alleges that defendant Helmsley demanded kickbacks of goods and services for Dunnellen Hall from certain contractors and vendors doing business with the Helmsley organization, threatening them that Helmsley business would be withheld unless the kickbacks were paid.

The indictment was filed on April 14, 1988. In her first challenge appellant moved on June 17 to dismiss it on the grounds of a prejudicial leak of pre-trial publicity, which defendant claimed constituted violations of grand jury secrecy in contravention of Fed.R.Crim.P. 6(e). The district court denied defendant's Rule 6(e)

motion on July 29, 1988. A panel of this Court issued a summary order on September 14, 1988 dismissing for lack of jurisdiction defendant's appeal from that denial.

The instant appeal is defendant's second challenge to the indictment. It concerns Leona Helmsley's June 11 and November 7, 1985 appearances before a New York County grand jury investigating allegations of New York State sales tax fraud. On June 17, 1988 defendant—who had previously entered a not guilty plea—moved for a hearing and dismissal of her federal indictment. Defendant claims her Fifth Amendment rights were violated; she alleges that the federal grand jury made use of her June and November, 1985 immunized state grand jury testimony. Appellant complains of "taint" of the federal grand jury process because of press reports of her testimony before the state grand jury, from an overlap in state and federal prosecutorial personnel, and from the prosecutors' alleged sharing of evidence. In sum, Helmsley contends that she was targeted for the federal prosecution by virtue of her state grand jury testimony. On August 30, 1988 Judge Walker denied this motion to dismiss the indictment, and ruled that the *Kastigar* hearing could be held after the trial in the event of a conviction. This expedited appeal followed.

## II DISCUSSION

This second motion to dismiss the indictment is cast in somewhat obscure terms, perhaps to avoid appearing to challenge the same indictment before the same district court judge on essentially the same grounds. It appears to allege general unfairness of the grand jury process rather than the earlier more specific attack she made under Rule 6(e). Stripped of its subtleties, defendant Helmsley's argument, in essence, asks that the collateral order exception to the finality rule be expanded. This request is based on defendant's contention that if review is not granted now, protection of her Fifth Amendment rights will be forever lost. To put her arguments for an expansion of the collateral order exception in proper perspective, we discuss

first the finality rule, and then the collateral order doctrine exception to it.

## A. *The Finality Rule and the Collateral Order Exception*

In creating those courts inferior to the Supreme Court, Congress since the Judiciary Act of 1789 has carefully limited their appellate jurisdiction. Under 28 U.S.C. § 1291 appeal is allowed only "from all final decisions of the district courts." In a criminal case, as here, an appeal usually may be taken only after sentence has been imposed because that is the final judgment in such a case. *Flanagan v. United States*, 465 U.S. 259, 263, 104 S.Ct. 1051, 1053, 79 L.Ed.2d 288 (1984); *Berman v. United States*, 302 U.S. 211, 212, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937); "Project: Seventeenth Annual Review of Criminal Procedure" 76 Geo.L.J. 1199, 1206 n. 3330 (1988) (collecting cases). The "finality" rule has been the cornerstone of appellate jurisdiction from the earliest days of the Republic. *See DiBella v. United States*, 369 U.S. 121, 124, 82 S.Ct. 654, 656, 7 L.Ed.2d 614 (1962). The rule promotes appellate deference to trial judges, reduces the ability of litigants to engage in delaying tactics, avoids piecemeal appeals, and is recognized as an essential tool in the efficient administration of justice. *See Flanagan*, 465 U.S. at 263–64, 104 S.Ct. at 1053–54 (1984); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981).

The recited policy considerations of prompt adjudication underlying the finality rule are of even greater moment in the field of criminal law. *See Flanagan*, 465 U.S. at 264, 104 S.Ct. at 1054. These policies are undermined when the conclusion of the criminal proceedings are fragmented and delayed. Thus, not only the accused but also society have a strong interest in avoiding delay. *See id.* 465 U.S. at 264–65, 104 S.Ct. at 1054–55; *United States v. Hollywood Motor Car*, 458 U.S. 263, 265, 102 S.Ct. 3081, 3082, 73 L.Ed.2d 754 (1982); *Cobbledick v. United States*, 309 U.S. 323, 325–26, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). In light of these considerations, the collateral order exception is more narrowly circumscribed in criminal cases. Appeals prior to final judgment are therefore limited to three kinds of cases. *See Abney v. United States*, 431 U.S. 651, 656–62, 97 S.Ct. 2034, 2038–41, 52 L.Ed.2d 651 (1977) (Double Jeopardy); *Helstoski v. Meanor*, 442 U.S. 500, 508, 99 S.Ct. 2445, 2449, 61 L.Ed.2d 30 (1979) (Speech and Debate Clause); *Stack v. Boyle*, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 3 (1951) (motion to reduce bail).

Congress recognized that rigid enforcement of the finality rule may in some cases cause grave injustice. It therefore created certain exceptions by statute. *See, e.g.*, 28 U.S.C. § 1292(a) (injunctions, receivership, admiralty). Moreover, the Supreme Court has traditionally given the finality rule a "practical rather than a technical construction." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949).

*Cohen* articulated what has become known as the collateral order exception to the finality rule. The Court stated that in a small class of cases there are claims of right "separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1226. The doctrine today permits immediate appeal of an order that conclusively determines the disputed question, which issue is completely separate from the merits of the action, and which is effectively unreviewable on appeal from a final judgment. *Coppers & Lybrand v. Livesay*, 437 U.S. 463, 468–69, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978); *Abney v. United States*, 431 U.S. 651, 658, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977).

## B. *Appellant's Fifth Amendment Claim*

None of the limited claims in criminal cases of Double Jeopardy, Speech and Debate Clause, or reduction of bail are raised on this appeal. Instead, appellant principally argues that we should create a new exception to the finality rule in cases in-

volving an alleged Fifth Amendment violation. Appellant asserts that she should be entitled to bring an appeal from a non-final order denying her motion to dismiss the indictment because, according to appellant, the Fifth Amendment guarantees her a right not to be tried when the government has used in any way her immunized state grand jury testimony. As a corollary to this contention, defendant also asserts that her right not to be tried may only be established by granting her a pretrial *Kastigar* hearing on the issue of possible taint.

The taint arises, Helmsley claims, because Assistant New York State Attorney General Diane Peress was present on June 11, 1985 when Helmsley gave immunized testimony before the New York County Grand Jury. Although there is some dispute about whether anyone connected with the current federal case was present on November 7, 1985, the occasion of Helmsley's second New York State Grand Jury appearance, it is conceded by the government that Ms. Peress has now been designated as a Special United States Attorney, has actively participated in this federal prosecution and is one of the prosecutors responsible for the trial of defendant Helmsley and her co-defendants. Under *Kastigar*, a witness compelled to testify under a grant of immunity must be left in substantially the same position as if the witness had claimed the Fifth Amendment privilege. *See Kastigar*, 406 U.S. at 457, 92 S.Ct. at 1663. Defendant now claims that if the federal investigation was initiated as a result of information gleaned from her state immunized testimony, she will not be in the same position—if she is forced to stand trial—as if she had claimed her Fifth Amendment rights.

■ Defendant's argument is fundamentally flawed. As the Supreme Court observed in the three limited criminal case exceptions to the finality rule, an order refusing to reduce bail becomes moot if review must await conviction and sentence. *See, e.g., Flanagan*, 465 U.S. at 266, 104 S.Ct. at 1055; *Stack v. Boyle*, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 3 (1951). Similarly, the Double Jeopardy and the Speech and Debate Clause exception protect more than a right not to be convicted. In each case, the right involved is a right not to stand trial at all for the charged offense. *See Flanagan*, 465 U.S. at 266, 104 S.Ct. at 1055. Even assuming the truth of defendant's taint allegations, a viable Fifth Amendment claim simply does not confer upon the accused a right not to stand trial at all. The denial at the trial level of a Fifth Amendment right—like prosecutorial vindictiveness and the claimed denial of a speedy trial—does not outweigh the strong policy considerations underlying the finality rule so as to make such denial the subject of an interlocutory appeal. *See Hollywood Motor Car Co.*, 458 U.S. at 267, 102 S.Ct. at 3083 (prosecutorial vindictiveness "fails the third part of the test for *Cohen* … that the claim 'be effectively unreviewable on appeal from a final judgment.' ") (quoting *Coopers & Lybrand*, 437 U.S. at 468, 98 S.Ct. at 2457); *United States v. MacDonald*, 435 U.S. 850, 860, 98 S.Ct. 1547, 1553, 56 L.Ed.2d 18 (1978) (Right to speedy trial does not encompass "right not to be tried" that must be vindicated before trial.). Thus, we decline to expand the collateral order exception in this case.

### C. *Appellant's Claim Does Not Satisfy the Collateral Order Exception*

■ Appellant also argues that the district court's order is appealable because it falls within the collateral order doctrine. Judge Walker dismissed Helmsley's motion without prejudice and emphasized that defendant could renew the motion if and when she is convicted. The motion, of course, becomes moot if she is acquitted. Hence, the trial court's order did not "conclusively determine the disputed question" because that court has not held a hearing to address the merits of defendant's allegations, and could rule in her favor after a trial. *See Coopers & Lybrand*, 437 U.S. at 468, 98 S.Ct. at 2457; *Cohen*, 337 U.S. at 547, 69 S.Ct. at 1226.

Nor does the order meet the third collateral exception requirement that it "be effectively unreviewable on appeal from a final judgment," as Helmsley contends. In support of this argument, defendant points

out that the Supreme Court has granted *certiorari* in *United States v. Midland Asphalt,* 840 F.2d 1040 (2d Cir.), *cert. granted, Midland Asphalt Corp. v. United States,* —— U.S. ——, 108 S.Ct. 2869, 101 L.Ed.2d 905 (1988). In *Midland Asphalt,* we held that the Supreme Court's decision in *United States v. Mechanik* did not preclude "a federal court of appeals from exercising post-trial review" of alleged violations of Fed.R.Crim.P. 6(e). 840 F.2d at 1046. Helmsley posits that if *Midland Asphalt* is reversed—and if the Supreme Court extends *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) (denying post-conviction review of alleged 6(d) violation because violation, if any, was found to be harmless because of a "supervening jury verdict")—she would then be unable to obtain *any* post-conviction review of the alleged grand jury-related improprieties.

As a reason for fitting the instant order within the collateral order exception, this parade of horribles is too remote and speculative to be persuasive. Defendant has cited no authority for the proposition that the third prong of the *Cohen* exception is satisfied by *potential* unreviewability. And, such a proposition is plainly untenable because it has no limiting principle. Further, because there is no way to know how the Supreme Court will rule in *Midland Asphalt,* we must apply the law as it exists at the time of this writing. Examining that law satisfies us that defendant may raise her allegations of grand jury abuse of process after trial. *See United States v. Larouche Campaign,* 829 F.2d 250, 253 (1st Cir.1987) (per curiam); *United States v. Taylor,* 798 F.2d 1337, 1340 (10th Cir.1986); *cf. Midland Asphalt,* 840 F.2d at 1046.

Moreover, even if appellant's predictions on *Midland Asphalt* prove accurate, it does not follow that she would be automatically denied post-conviction review. Concededly, a reversal of *Midland Asphalt* might decrease access to post-conviction review, but the door could remain slightly ajar. As Justice Marshall has observed, interlocutory review might be appropriate if postconviction review was wholly un-

available. *Mechanik,* 475 U.S. at 81 n. 1, 106 S.Ct. at 948 n. 1 (Marshall, J., dissenting); *Midland Asphalt,* 840 F.2d at 1046; *cf. United States v. Benjamin,* 812 F.2d 548, 550 (9th Cir.1987) (interpreting *Mechanik* to bar post-conviction review of 6(e) violation and therefore requiring interlocutory review). As appellant is entitled to post-conviction review as the law now stands, and still may have access to such review regardless of *Midland Asphalt*'s disposition, interlocutory review is unnecessary and hence premature.

## III CONCLUSION

In sum, the instant order is not final. Because appellant has failed to meet two of the three requirements under *Cohen,* it is not appealable under the collateral order exception to the finality rule. Nor do we see any reason to lower the legal bar of the finality rule by creating an additional exception to the collateral order doctrine in this case. Were appellant's proposed exception adopted, it would swallow the rule. We are therefore without jurisdiction to rule presently on the merits of the appeal. It is accordingly dismissed.

APPEAL DISMISSED.

VAN GRAAFEILAND, Circuit Judge, concurring:

I am satisfied that Judge Pierce's persuasive reasoning in *United States v. Midland Asphalt Corp.,* 840 F.2d 1040, 1045–46 (2d Cir.1988), will not be rejected by the Supreme Court. In any event, unless and until it is, the *Midland* decision is binding on this Court. Moreover, even if Judge Walker's decision to defer in the instant case were appealable, I would hold on the merits that the decision was made for good cause, since the district court felt that "the trial record would enable the Court to better determine whether [the appellant's] Fifth Amendment rights were infringed." *See United States v. Williams,* 644 F.2d 950, 952–53 (2d Cir.1981); *United States v. Nemes,* 555 F.2d 51 (2d Cir.1977); 3A Wright, *Federal Practice and Procedure:*

*Criminal* § 194 (1982); Fed.R.Crim.P. 12(e).