**UNITED STATES of America, Appellee,**

v.

**Eugene Robert WALLACH, a/k/a "E. Robert (Bob) Wallach", Rusty Kent London, and Wayne Franklyn Mohamed Farid Chinn, Defendants–Appellants.**

**No. 867, Docket 88–1564.**

United States Court of Appeals, Second Circuit.

Argued Feb. 28, 1989.

Decided March 23, 1989.

Ted W. Cassman, Emeryville, Cal. (Penelope M. Cooper, Cristina C. Arguedas, George C. Walker, Albert Krieger, Lawrence A. Gibbs, of counsel, and Cooper, Arguedas & Cassman, on the brief), for defendants-appellants Rusty Kent London and Wayne Franklyn Mohamed Farid Chinn.

Edward M. Chikofsky, New York City, submitted a brief on behalf of defendant-appellant Eugene Robert Wallach.

Baruch Weiss, Asst. U.S. Atty., New York City (Benito Romano, U.S. Atty., and Elliott B. Jacobson, Vincent L. Briccetti, Asst. U.S. Attys., on the brief) for appellee.

Before FEINBERG, TIMBERS, and ALTIMARI, Circuit Judges.

TIMBERS, Circuit Judge:

The essential question presented on this appeal is whether we have appellate jurisdiction to review an interlocutory order denying a pretrial motion to dismiss an indictment. Under the circumstances of this case, we hold that we do not.

Eugene Robert Wallach ("Wallach"), Rusty Kent London ("London"), and Wayne Franklyn Mohamed Farid Chinn ("Chinn") (collectively, "appellants"), ap-

peal from an order entered December 6, 1988 in the Southern District of New York, Richard Owen, *District Judge,* denying a motion for reconsideration of the court's previous order denying without an evidentiary hearing appellants' motion to dismiss an indictment charging them with crimes arising from an investigation into their activities in connection with Welbilt Electronic Die Corporation ("Wedtech"). Appellants asserted that the indictment was tainted by a violation of Fed.R.Crim.P. 6(d) ("Rule 6(d)") because of the presence before a grand jury in the Southern District of New York of Assistant United States Attorneys ("SDNY prosecutors") who (a) had a conflict of interest, and (b) had conducted their investigation in violation of the exclusive jurisdiction provisions of the Ethics in Government Act of 1978, 28 U.S.C. § 591 *et seq.* (1982 & Supp. IV 1986) ("Ethics Act").

On appeal, the government argues that we are without appellate jurisdiction since the appeal is from a non-final order and that in any event there was a violation of neither the Ethics Act nor Rule 6(d). Appellants argue that there is jurisdiction to hear and decide this appeal pursuant to the collateral order exception to the final judgment rule, and the indictment should be dismissed because of the unauthorized presence before the grand jury of the SDNY prosecutors.

We hold that this appeal is from an interlocutory order which does not fall within any exception to the final judgment rule. Accordingly, we dismiss the appeal.

### I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

In 1986, the SDNY prosecutors began a grand jury investigation of asserted corrupt practices by Wedtech, a military contractor located in the Bronx, N.Y., in obtaining government contracts. During the course of that investigation, there came to light possible misconduct by Franklyn C. Nofziger ("Nofziger"), former Assistant to the President for Political Affairs at the White House, regarding his lobbying efforts on behalf of Wedtech. On February 2, 1987, following a preliminary investigation by the SDNY prosecutors pursuant to § 592(a) of the Ethics Act, James C. McKay ("McKay") was appointed Independent Counsel pursuant to § 593(b) of the Ethics Act to conduct a full investigation of Nofziger. Apparently recognizing possible overlap with the SDNY investigation, the referral order entered by the United States Court of Appeals for the District of Columbia, Division for the Purpose of Appointing Independent Counsels ("Independent Counsel Court") stated:

> "[I]t may be necessary for Independent Counsel to coordinate his investigation with investigations being conducted by the United States Attorneys in New York and Maryland".

While McKay was investigating Nofziger, the SDNY grand jury investigation continued apace. On April 8, 1987, after the initiation of an investigation by the Public Integrity Section of the Department of Justice's Criminal Division into reports that he was involved with Wedtech, Attorney General Edwin Meese III ("Meese") recused himself from participation in any further Wedtech-related investigations. On May 11, 1987, the question whether Meese's relationship with Wedtech, Nofziger, Wallach, Chinn, and/or Financial Management International, Inc. (a corporation owned and operated by Chinn) violated any federal conflict of interest or criminal laws was referred to McKay for investigation pursuant to §§ 592(e) & 594(e) of the Ethics Act. While the referral recognized that "various [other] investigations have developed substantial evidence of Wedtech-related criminal conduct on the part of individuals other than Mr. Meese", it did not refer these other matters to McKay.[1] The referral was accepted by McKay the next day.

---

1. The precise issue referred on May 11 by Acting Attorney General Arnold I. Burns to McKay for investigation was as follows:

> "[W]hether the federal conflict of interest law, 18 U.S.Code §§ 201–211, or any other provision of federal criminal law, was violated by

On August 18, 1987, in response to questions regarding the scope of McKay's jurisdiction, the Independent Counsel Court entered an order confirming the May 11 referral of the question whether Meese's dealings with Wedtech, Wallach or others violated any federal conflict of interest or criminal laws. The order reiterated that McKay was empowered to investigate and indict Meese as well as others, but only if the other individuals had engaged in criminal activity in concert with Meese.

On December 21, 1987, pursuant to § 597(a) of the Ethics Act, McKay gave written authorization for the SDNY prosecutors to proceed with indictments of Wallach, Chinn and London. The next day, a SDNY grand jury returned the original 18-count indictment of Wallach, London and Chinn which variously charged commercial bribery, mail and securities fraud, and operation of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1961 *et seq.* (1982 & Supp. IV 1986) ("RICO"). A modified and expanded superseding indictment later was returned.

On September 9, 1988, Wallach, Chinn, and later London, moved to dismiss the indictment, asserting that the appearance of the SDNY prosecutors before the grand jury which returned the indictment was improper because (a) the SDNY prosecutors had a "pervasive conflict of interest" and conflicting loyalties in the subject matter of the investigation and indictment of appellants and (b) the referral of the Meese investigation to McKay divested the SDNY prosecutors of jurisdiction to investigate Wedtech-related matters absent written authorization from McKay pursuant to § 597(a) of the Ethics Act.[2] It was claimed, therefore, that the SDNY prosecutors who had appeared before the grand jury were not "[a]ttorneys for the government" authorized under Rule 6(d) to "be present while the grand jury [was] in session".

On November 18, 1988, after oral argument, Richard Owen, *District Judge*, declined to hold an evidentiary hearing and denied from the bench the motion to dismiss the indictment. The court held that there was no violation of § 597(a) of the Ethics Act since Meese, the specific subject of the referral to McKay, was not a target of the SDNY investigation. On the instant expedited appeal, appellants seek review of the district court's denial of their later motion for reconsideration and of its denial of their request for an evidentiary hearing.

For the reasons set forth below, we dismiss the appeal since it is from a non-appealable interlocutory order. We therefore do not reach the substantive issues raised and we express no opinion as to their merits.

## II.

It is basic of course that our jurisdiction as a United States Court of Appeals is

---

Mr. Meese's relationship or dealings at any time from 1981 to the present with any of the following: Welbilt Electronic Die Corporation/Wedtech Corporation (including any of its contracts with the U.S. Government, or efforts to obtain same); Franklyn C. Nofziger; E. Robert Wallach; W. Franklyn Chinn; and/or Financial Management International, Inc.".

**2.** Section 597(a) provides:

"Whenever a matter is in the prosecutorial jurisdiction of a[n] independent counsel or has been accepted by a[n] independent counsel under section 594(e) of this title, the Department of Justice ... shall suspend all investigations and proceedings regarding such matter ... except insofar as such independent counsel agrees in writing that such investigation or proceedings may be continued by the Department of Justice".

The Office of Independent Counsel, operating within the Department of Justice, is virtually a mirror image of the Independent Counsel created by the Ethics Act except that the appointment is made by the Attorney General rather than by a court. 28 C.F.R. § 600.1(a) (1988). For present purposes, it is important only to note that the regulation contains an analog of § 597(a) which is virtually identical in all pertinent respects with respect to the relationship of the Department of Justice and the Independent Counsel. The Office of Independent Counsel was created in the Spring of 1987 in response to questions regarding the constitutionality of the Independent Counsel provisions of the Ethics Act. On June 12, 1987, McKay was given a parallel appointment pursuant to these provisions. 28 C.F.R. § 602.1 (1988). The constitutionality of the Independent Counsel Act later was upheld. *Morrison v. Olson,* [—— U.S. ——] 108 S.Ct. 2597 [101 L.Ed.2d 569] (1988).

limited to review of "final decisions of the district courts of the United States." 28 U.S.C. § 1291 (1982). The Supreme Court has long held that the policy underlying this statute is to avoid piecemeal appellate review of district court decisions which do not terminate the litigation. *Flanagan v. United States*, 465 U.S. 259, 264 [104 S.Ct. 1051, 1054, 79 L.Ed.2d 288] (1984); *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 [102 S.Ct. 3081, 3082, 73 L.Ed.2d 754] (1982) (per curiam).

■ Under the collateral order exception to the final judgment rule, appeal of an interlocutory pretrial order may be allowed only if the order falls within that small class of cases "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated". *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 [69 S.Ct. 1221, 1226, 93 L.Ed. 1528] (1949). To come within the collateral order exception, an order must (a) conclusively determine the disputed issue; (b) resolve an important issue completely separate from the merits of the action; and (c) be effectively unreviewable on appeal from a final judgment in the action. *Flanagan, supra*, 465 U.S. at 265 [104 S.Ct. at 1054]; *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 [98 S.Ct. 2454, 2457, 57 L.Ed.2d 351] (1978); *United States v. Helmsley*, 864 F.2d 266, 268 (2 Cir.1988) ("Helmsley I"); *United States v. Midland Asphalt Corp.*, 840 F.2d 1040, 1042 (2 Cir.1988), *aff'd.*, [—— U.S. ——] 109 S.Ct. 1494 [103 L.Ed.2d 879] (1989).

In criminal cases, the final judgment rule is " 'at its strongest' ". *Flanagan, supra*, 465 U.S. at 264 [104 S.Ct. at 1054] (quoting *Hollywood Motor Car, supra*, 458 U.S. at 265 [102 S.Ct. at 3082] ); *see DiBella v. United States*, 369 U.S. 121, 126 [82 S.Ct. 654, 657, 7 L.Ed.2d 614] (1962); *Cobbledick v. United States*, 309 U.S. 323, 325 [60 S.Ct. 540, 541, 84 L.Ed. 783] (1940). The reason for this is that the " 'encouragement of delay, is fatal to the vindication of the criminal law' ". *United States v. MacDonald*, 435 U.S. 850, 854 [98 S.Ct. 1547, 1549, 56 L.Ed.2d 18] (1978) (quoting *Cobbledick, supra*, 309 U.S. at 325 [60 S.Ct. at 541] ); *see Flanagan, supra*, 465 U.S. at 264–65 [104 S.Ct. at 1054]; *Abney v. United States*, 431 U.S. 651, 657 [97 S.Ct. 2034, 2039, 52 L.Ed.2d 651] (1977). In criminal cases, the Supreme Court has allowed interlocutory appeals in only three limited situations: an order denying a motion for reduction of bail, *Stack v. Boyle*, 342 U.S. 1 [72 S.Ct. 1, 96 L.Ed. 3] (1951); an order denying a pretrial motion to dismiss an indictment on double jeopardy grounds, *Abney v. United States*, 431 U.S. 651 [97 S.Ct. 2034, 52 L.Ed.2d 651] (1977); and an order denying a motion to dismiss an indictment on the ground that it violates the Speech and Debate Clause, *Helstoski v. Meanor*, 442 U.S. 500 [99 S.Ct. 2445, 61 L.Ed.2d 30] (1979). *See Flanagan, supra*, 465 U.S. at 265–66 [104 S.Ct. at 1054–55]; *Hollywood Motor Car, supra*, 458 U.S. at 265–66 [102 S.Ct. at 3082–83]; *Helmsley I, supra*, 864 F.2d at 268; *Midland Asphalt, supra*, 840 F.2d at 1042. Appellants assert none of these grounds for dismissal of the instant indictment.

Appellants argue, however, that in light of *United States v. Mechanik*, 475 U.S. 66 [106 S.Ct. 938, 89 L.Ed.2d 50] (1986), the order denying their motion under Rule 6(d) to dismiss the indictment is effectively unreviewable posttrial and therefore should be subject to interlocutory review. Appellants also cite our dicta in *Midland Asphalt, supra*, regarding the reviewability of Rule 6(d) claims as indicating that at least in our Court an appeal is available to review a pretrial order denying a motion to dismiss an indictment.

In *Mechanik*, the petitioners sought review of a post-conviction order denying their motion to dismiss a superseding indictment under Rule 6(d) arising from the simultaneous presence before the grand jury of two testifying government witnesses. The Supreme Court held that, since the Rule 6(d) claim challenged the validity of the grand jury's finding of probable cause, and later conviction conclusively resolved the issue of factual guilt, the Rule 6(d)

claim was moot and therefore unreviewable since "[m]easured by the petit jury's verdict ... any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt". *Mechanik, supra,* 475 U.S. at 70 [106 S.Ct. at 941]. In so holding, the Court rejected the argument that Rule 6(d) requires automatic reversal of a subsequent conviction regardless of the lack of prejudice since Fed.R.Crim.P. 52(a), which provides that errors not affecting substantial rights shall be disregarded, applies equally to "errors, defects, irregularities, or variances" which occur before a grand jury as it does to such errors in the criminal trial itself. *Id.* at 71–72 [106 S.Ct. at 942]; *cf. Bank of Nova Scotia v. United States,* [— U.S. —] 108 S.Ct. 2369, 2374 [101 L.Ed.2d 228] (1988) (reaffirming the applicability of the Rule 52(a) harmless error inquiry to motions to dismiss an indictment).

Appellants argue that *Mechanik* makes all Rule 6(d) claims unreviewable posttrial. A close reading of the opinion indicates, however, that it is only error affecting the charging decision of the grand jury that is made unreviewable posttrial since such an error which goes to the finding of probable cause is mooted by later conviction establishing guilt beyond a reasonable doubt. As the Tenth Circuit held in *United States v. Taylor,* 798 F.2d 1337 (10 Cir.1986), "*Mechanik* did not hold that a Rule 6 violation of any sort or any other act which affects the fundamental fairness of the criminal proceedings discovered prior to trial is not justiciable after conviction". *Id.* at 1340; *see also United States v. Howard,* 867 F.2d 548, 551–52 (9 Cir.1989) (holding that *Mechanik* eliminates posttrial review only of nonfundamental grand jury abuses); *United States v. LaRouche Campaign,* 829 F.2d 250, 253 (1 Cir.1987) (per curiam) (same); *cf. Bank of Nova Scotia, supra,* 108 S.Ct. at 2374–75 (distinguishing between funda-

mental or constitutional error and "nonconstitutional error").[3]

■ The unique nature of the instant Rule 6(d) claim does not render easy our task of deciding the question before us. On the one hand, the claim that Rule 6(d) was violated by the presence before the grand jury of the SDNY prosecutors tainted with a "pervasive conflict of interest" essentially challenges the fundamental fairness of the grand jury proceedings, *e.g., Young v. United States ex rel. Vuitton Et Fils S.A.,* 481 U.S. 787, 809–10 [107 S.Ct. 2124, 2138–39, 95 L.Ed.2d 740] (1987) (appointment of interested prosecutor is a "fundamental error"), and thus would remain reviewable posttrial. On the other hand, appellants' claim that the asserted violation of the Ethics Act disqualified the SDNY prosecutors from being considered "attorneys for the government" authorized by Rule 6(d) to appear before the grand jury is more akin to a "technical" violation of Rule 6(d) going to the validity of the grand jury's charging decision which, after *Mechanik,* apparently would not be reviewable posttrial.

■ The Supreme Court expressly has left unresolved the question of the pretrial reviewability of the denial of a Rule 6(d) motion to dismiss an indictment. *Mechanik, supra,* 475 U.S. at 72 [106 S.Ct. at 942]. In light of the Court's stern reluctance to allow interlocutory review in criminal cases, *e.g., Flanagan, supra* (disqualification of defense counsel), *Hollywood Motor Car, supra* (prosecutorial vindictiveness), and *MacDonald, supra* (Sixth Amendment right to Speedy Trial), as well as our own previously expressed reluctance to do so, *e.g., United States v. Helmsley,* 866 F.2d 19, 21–22 (2 Cir.) ("Helmsley II"), *cert. denied,* [— U.S. —] 109 S.Ct. 1638 [104 L.Ed.2d 154] (1989); *Midland Asphalt, supra,* 840 F.2d at 1042, 1046, we hold that the instant appeal should be dismissed for lack of appellate jurisdiction.

**3.** In *Midland Asphalt,* we declined to allow interlocutory review of the denial of a motion to dismiss an indictment due to an asserted violation of Fed.R.Crim.P. 6(e) because such claims were not rendered harmless by conviction, as were those in *Mechanik,* and thus remained

reviewable posttrial. *Midland Asphalt, supra,* 840 F.2d at 1046. *Midland Asphalt* provides little guidance in the instant case since there we drew a distinction between Rule 6(e) and Rule 6(d) claims but not between different *types* of Rule 6(d) claims, as we do here.

We do so primarily because we are un-convinced that an asserted violation of Rule 6(d) is sufficiently "important" under the second prong of *Cohen* to warrant a fur-ther extension of the collateral order doc-trine. *See United States v. Daniels*, 848 F.2d 758, 760 (7 Cir.1988) (Easterbrook, J.); *LaRouche Campaign, supra*, 829 F.2d at 254. As in *Hollywood Motor Car, Flana-gan*, and *MacDonald*, appellants here as-sert no "right not to be tried" which "nec-essarily falls into the category of rights that can be enjoyed only if vindicated prior to trial". *Hollywood Motor Car, supra*, 458 U.S. at 269, [102 S.Ct. at 3084]; *see also Helmsley I, supra*, 864 F.2d at 269 (Fifth Amendment does not confer "a right not to stand trial at all").[4] It would be anomalous to treat claims such as those raised here more favorably than much more significant claims such as prosecutori-al vindictiveness which, in *Hollywood Mo-tor Car*, were found not to warrant an interlocutory appeal (though admittedly due to a failure to satisfy the third rather than the second prong of *Cohen*). *Cf. Bank of Nova Scotia, supra*, 108 S.Ct. at 2374 ("It would be inappropriate to devise a rule permitting federal courts to deal more sternly with nonconstitutional harmless er-rors than with constitutional errors that are likewise harmless".).

To the extent, therefore, that appellants' claims raise an issue of due process or fundamental fairness in the grand jury pro-ceedings, they will be preserved for later review should such review be warranted. *E.g. Taylor, supra*, 798 F.2d at 1340. To the extent that appellants' claims raise a nonconstitutional Rule 6(d) violation affect-ing the grand jury's decision to indict, they either will be vindicated by acquittal or rendered harmless by conviction. While appellants understandably would prefer resolution of their claims sooner rather than later, " '[b]earing the discomfiture and

cost of a prosecution for crime even by an innocent person is one of the painful obli-gations of citzenship.' " *Flanagan, supra*, 465 U.S. at 267 [104 S.Ct. at 1056] (quoting *Cobbledick, supra*, 309 U.S. at 325 [60 S.Ct. at 541] ).

Although we recognize that our decision today may result in some violations of Rule 6(d) going unremedied, we believe that this result is required by important policy con-siderations and by the caselaw governing the final judgment rule in criminal cases. As the First Circuit has observed with re-spect to some nonconstitutional errors un-der Rule 6(d) going unremedied if interlocu-tory appeal is not allowed, "[w]e think it would be the rare alleged abuse of the grand jury process which, while not impor-tant enough to warrant relief on direct appeal from a judgment of conviction, would be important enough to warrant the extraordinary step of an interlocutory ap-peal in a criminal case". *LaRouche Cam-paign, supra*, 829 F.2d at 254; *accord, Daniels, supra*, 848 F.2d at 760 ("The pos-sibility that a claim might be lost *because any error was harmless* is hardly a reason why the court should entertain an interloc-utory appeal on the same subject".) (em-phasis in original).

We hold that the instant appeal must be dismissed for lack of appellate jurisdiction.

### III.

To summarize:

Since this appeal from an interlocutory order denying a motion to dismiss an indict-ment does not fall within any exception to the final judgment rule, the appeal is dis-missed for lack of appellate jurisdiction.

Dismissed.

---

4. Indeed, with respect to that aspect of appel-lants' claim based on an asserted violation of the Ethics Act, it is unclear whether any right at all properly can be asserted by appellants. *See In re Subpoena of Persico*, 522 F.2d 41, 63 (2 Cir.1975) (technical provisions in special prose-cutor statutes are intended to protect the government, not to limit the power to prose-

cute); *see also United States v. Balistrieri*, 779 F.2d 1191, 1208–09 (7 Cir.1985) ("[T]here is no evidence that Congress intended [certain techni-cal provisions of the Judicial Code] as safe-guards for the benefit of those whose indict-ment might be sought".), *cert. denied*, 477 U.S. 908 [106 S.Ct. 3284, 91 L.Ed.2d 573] (1986).