473 F.3d 487
 UNITED STATES of America, Appellee,
v.
Ronald ROBINSON, Dennis Crosby, Victor Wright, Nicole Brown, Irving Lorenzo, Christopher Lorenzo, MI Records, IG Records, Cynthia Brent, Vash-Ti Paylor, and Emanuel Mosley, Defendants,
Kenneth McGriff, Defendant-Appellant.
 Docket No. 06-2014-cr.
 United States Court of Appeals, Second Circuit.
 Argued: August 7, 2006.
 Decided: January 5, 2007.
 
 David A. Ruhnke (Jean D. Barrett, on the brief), Ruhnke & Barrett, Montclair, NJ, for Defendant-Appellant Kenneth McGriff.
 Barbara D. Underwood, Counsel to the United States Attorney (Linda A. Lacewell, Carolyn Pokorny, Assistant United States Attorneys, of counsel) for Roslynn R. Mauskopf, United Sates Attorney for the Eastern District of New York, for Appellee United States of America.
 Before B.D. PARKER, WESLEY, and HALL, Circuit Judges.
 B.D. PARKER, JR., Circuit Judge.
 
 
 1
 Appellant Kenneth McGriff, a defendant in a capital murder case pending in the United States District Court for the Eastern District of New York, challenges an April 13, 2006 order of the court (Block, J.) denying his motion to strike the government's death penalty notice. United States v. McGriff, 427 F.Supp.2d 253 (E.D.N.Y.2006) (amended memorandum and order). McGriff contends that the death notice was not provided a reasonable time before the trial as required by the Federal Death Penalty Act, 18 U.S.C. § 3593(a).[1] We dismiss for lack of appellate jurisdiction.
 
 BACKGROUND
 
 2
 In January 2005, a grand jury indicted McGriff and several of his co-defendants for, inter alia, murder in aid of racketeering under 18 U.S.C. § 1959, making them eligible for the death penalty. Superseding indictments over the course of the next year added charges of murder-for-hire under 18 U.S.C. § 1958(a), which also authorizes the death penalty. The last superseding indictment, which set forth factors supporting the death penalty for each defendant, was handed down in March 2006. See McGriff, 427 F.Supp.2d at 259.
 
 
 3
 Department of Justice policy requires the United States Attorney prosecuting such a case to submit a recommendation on whether to pursue the death penalty to the Attorney General, who makes the final determination. See id. at 257. If the government ultimately decides it will seek the death penalty, it must comply with § 3593(a), which requires the government attorney to give notice to that effect to the defendant, and to file it with the court, "a reasonable time before the trial or before acceptance by the court of a plea of guilty." 18 U.S.C. § 3593(a). The notice must:
 
 
 4
 (1) stat[e] that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and
 
 
 5
 (2) set[ ] forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death. Id.
 
 
 6
 The district court first set a trial date of March 6, 2006 for McGriff and four co-defendants, but stated that the date was "contingent on the case proceeding as a non-capital case." 427 F.Supp.2d at 259 (internal quotation marks omitted). In January 2006, the government sought an adjournment because it had not yet submitted death penalty recommendations to the Attorney General. See id. at 260. The district court rescheduled the trial for April 3, 2006, on the assumption that the government would not seek death sentences. The U.S. Attorney's recommendations were not submitted to Washington until February 24, 2006. The Attorney General authorized the death penalty for all five defendants on March 21. See id. at 260-61. The government filed death notices the following day.
 
 
 7
 On March 23, all five defendants, including McGriff, jointly moved to strike the notices on the ground that they did not comply with § 3593(a)'s "reasonable time" requirement. See id. at 256. On April 4, after the district court had postponed the trial date to consider the motions, the government withdrew its death penalty notices against all defendants except McGriff, leaving for the court's consideration only McGriff's motion to strike. See id. After hearing oral argument, the district court denied McGriff's motion, and set forth its reasoning in a written opinion issued on April 13. Id. The court reasoned that even though the notice had not been given a reasonable time before trial, and thus violated § 3593(a), the appropriate remedy for the untimely notice in this case was not to strike the notice but to grant a continuance. Accordingly, the court severed McGriff's case from his co-defendants' and determined that a new trial date would be set.
 
 
 8
 In considering whether a violation of § 3593(a) had occurred, the district court partially endorsed the Fourth Circuit's reasoning in United States v. Ferebe, 332 F.3d 722 (4th Cir.2003). In Ferebe, the court concluded that the proper way to analyze challenges to the timeliness of a death penalty notice is through a pre-trial inquiry into the objective reasonableness of the timing. Id. at 724. This conclusion was dictated by the court's treatment of the right to be free from untimely notice under § 3593(a) as a right "not to be tried." See id. at 731. Since any post-trial remedy would, by definition, be inadequate to protect such a right, the Ferebe court reasoned that the only permissible remedy for untimeliness is to strike the notice prior to trial. See id. at 730.
 
 
 9
 The district court agreed with Ferebe's "objective reasonableness" formulation, and found that post-trial considerations of whether the defendant had suffered "actual prejudice" should not determine the issue of untimely notice. 427 F.Supp.2d at 267.[2] The court concluded, however, that once a violation of § 3593(a) has occurred, striking the notice is not the only viable remedy. Cf. Ferebe, 332 F.3d at 749 (Niemeyer, J. dissenting); United States v. Pepin, 367 F.Supp.2d 315, 318 (E.D.N.Y. 2005) ("Unpersuasive is Ferebe's suggestion that a court may not effectively address the concerns raised by a motion to strike a death notice as untimely by postponing the trial."). The court disagreed with the assertion in Ferebe that § 3593(a) created a right not to stand trial in a capital case except on reasonable notice, and for that reason rejected the notion that a court could not effectively address concerns about an untimely death notice by postponing the trial.
 
 
 10
 Rather than proceed along this path, the district court analogized the question of remedies under § 3593(a) to the Supreme Court's analysis in Barker v. Wingo, 407 U.S. 514, 521, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which addressed the remedies available for violations of the right to a speedy trial. See 427 F.Supp.2d at 268; but cf. Ferebe, 332 F.3d at 734 (rejecting an analogy between the § 3593(a) right and the speedy trial right). The district court's decision to grant a continuance rather than striking the notice was based in part on its finding that McGriff was "responsible for a good portion of the time it took the U.S. Attorney to make her recommendations, as his mitigation memorandum was not filed until December 9, 2005, almost 11 months after he was first indicted." 427 F.Supp.2d at 271. McGriff challenges this finding, arguing that the district court's remedy was inappropriate.
 
 DISCUSSION
 
 11
 As a court of appeals, our jurisdiction is limited to reviewing "final decisions of the district courts of the United States." 28 U.S.C. § 1291. In criminal cases, this means we ordinarily lack jurisdiction to review decisions made before sentencing is complete and a judgment of conviction has been entered. See United States v. Olmeda, 461 F.3d 271, 278 (2d Cir.2006); United States v. Helmsley, 864 F.2d 266, 268 (2d Cir.1988). Recognizing this principle, McGriff maintains that he is entitled to appeal under the now familiar "collateral order" doctrine. This doctrine allows for interlocutory review of decisions that fall within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Pursuant to the collateral order doctrine, we may review "a preliminary or interim decision . . . when it (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." Sell v. United States, 539 U.S. 166, 176, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003) (internal quotation marks and alterations omitted); see also Olmeda, 461 F.3d at 278.
 
 
 12
 We have recognized that, "[i]n criminal cases, the final judgment rule is at its strongest." United States v. Wallach, 870 F.2d 902, 905 (2d Cir.1989) (internal quotation marks omitted). The rule reflects a "firm congressional policy against interlocutory or `piecemeal' appeals," and avoids delays which "are especially inimical to the effective and fair administration of the criminal law." Abney v. United States, 431 U.S. 651, 656-57, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (internal quotation marks omitted). Accordingly, the Supreme Court has interpreted the collateral order doctrine "`with the utmost strictness' in criminal cases," and has narrowly limited its application in such cases. Midland Asphalt Corp. v. United States, 489 U.S. 794, 799, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989) (noting that the Court has "found denials of only three types of motions to be immediately appealable: motions to reduce bail, motions to dismiss on double jeopardy grounds, and motions to dismiss under the Speech or Debate Clause" (citations omitted)); see also United States v. Weiss, 7 F.3d 1088, 1089 (2d Cir.1993); Wallach, 870 F.2d at 905. Although a district court's denial of a motion to strike a death penalty notice does not fall within one of the few exceptions to the final judgment rule we have previously recognized, McGriff urges us to align ourselves with other courts of appeals that have held that such denials are immediately appealable collateral orders. See Ferebe, 332 F.3d at 726; United States v. Wilk, 452 F.3d 1208, 1220 (11th Cir.2006) (agreeing with Ferebe's jurisdictional conclusion); cf. United States v. Ayala-Lopez, 457 F.3d 107, 108 (1st Cir.2006) (assuming, without deciding, that Ferebe and Wilk correctly applied the collateral order rule).
 
 
 13
 The holding in Ferebe was effectively compelled by its conclusion that § 3593(a) provides a right "not to stand trial for [a] capital offense except upon adequate notice." 332 F.3d at 728. In this regard, Ferebe analogized § 3593(a)'s notice provision to the Fifth Amendment's protection against double jeopardy. See id. at 729. The Double Jeopardy Clause "assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense." Abney, 431 U.S. at 661, 97 S.Ct. 2034; see also Olmeda, 461 F.3d at 278-79; Helmsley, 864 F.2d at 269. Following the Supreme Court, we have held that "[d]enials of motions to dismiss on double jeopardy grounds qualify as appealable orders within the collateral order doctrine." Olmeda, 461 F.3d at 278 (citing Abney, 431 U.S. at 662, 97 S.Ct. 2034). McGriff urges us to reach a similar conclusion here. He argues that if we were confined to reviewing a district court's decision as to whether § 3593(a) had been violated only after trial, on appeal from a final judgment, defendants would necessarily be exposed to the precise harm that the statute was intended to guard against.
 
 
 14
 We are not persuaded that § 3593(a) creates a right not to be tried. As the court below pointed out, the statute specifies that a death penalty notice must be given "a reasonable time before the trial," but "affords no guidance as to how to assess reasonableness, nor does it address the remedy to be fashioned if reasonable notice is not given; moreover, there is no legislative history addressing those issues." McGriff, 427 F.Supp.2d at 261-62 (internal quotation marks omitted). Despite this lack of guidance from Congress, the court in Ferebe concluded that the "indisputable purpose" of the notice provision "is to ensure that the accused will not be required to stand trial for his life without having received adequate notice before that trial." 332 F.3d at 727.
 
 
 15
 The Supreme Court has cautioned that 28 U.S.C. § 1291 "requires courts of appeals to view claims of a `right not to be tried' with skepticism, if not a jaundiced eye." Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 873, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994). This is so because "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a `right not to stand trial.'" Id.; see also United States v. Gurary, 793 F.2d 468, 471 (2d Cir.1986); Ferebe, 332 F.3d at 746-47 (Niemeyer, J. dissenting). As a result, only an "`explicit statutory or constitutional guarantee that trial will not occur'" may serve as "grounds for an immediate appeal of right under § 1291." Digital Equip. Corp., 511 U.S. at 874, 114 S.Ct. 1992 (quoting Midland Asphalt, 489 U.S. at 801, 109 S.Ct. 1494); see also Weiss, 7 F.3d at 1090. In light of these principles, we believe it inappropriate to conclude that § 3593(a) creates a right not to stand trial. Congress has neither included such a right in the text of the statute, nor so much as suggested that such a right exists.
 
 
 16
 Unlike a defendant claiming protection under the Double Jeopardy Clause or the Speech and Debate Clause, McGriff is not "contesting the very authority of the government to hale him into court to face trial on the charge against him." Abney, 431 U.S. at 659, 97 S.Ct. 2034. There is no question that McGriff may be tried on the substantive charges on which he was indicted, regardless of whether or not the death penalty may be imposed. Rather, he contests only the government's authority to seek that penalty if he is convicted, without having given timely notice of its intention to do so. For this reason, the protection that § 3593(a) affords a defendant in McGriff's position more closely resembles the protection afforded by any number of pretrial rights that involve notification or disclosure for the purpose of allowing the defendant to prepare his case. None of these rights amounts to a right not to stand trial and, of course, none supplies a basis for interlocutory review under the collateral order doctrine. See, e.g., 18 U.S.C. § 3432 (requiring, in capital cases, three days' notice prior to trial of witnesses, juror lists, and copies of indictments); Fed.R.Crim.P. 16(a) (requiring pretrial disclosure of evidence); Fox v. Mann, 71 F.3d 66, 69-71 (2d Cir.1995) (discussing pre-trial notice of alibi and alibi rebuttal witness requirements); see also Ferebe, 332 F.3d at 746 (Niemeyer, J. dissenting) ("[F]or the defendant [§ 3593(a)] is a procedural guarantee that he will be given adequate time to prepare for a death penalty trial and sentencing.").
 
 
 17
 Because we conclude that § 3593(a) does not create a right not to be tried, it necessarily follows that the section cannot be read to authorize, as an exclusive remedy for the government's violation of the statute, that the defendant may avoid trial altogether. Therefore, we may review the district court's order — and the government's conduct — in the ordinary course, in the event McGriff is convicted and elects to appeal. Our conclusion that the order is not "effectively unreviewable on appeal from a final judgment" also means that it fails to qualify as a collateral order. See Gurary, 793 F.2d at 471 (holding, in context of a speedy trial right challenge, that a district court's granting of an extension of time to indict may be effectively reviewed on appeal from a judgment of conviction despite certain adverse consequences for the defendant resulting from the lack of an immediate appeal); cf. Sell, 539 U.S. at 176, 123 S.Ct. 2174. In view of these conclusions, we need not decide at this point whether the district court properly found that the government provided inadequate notice under the statute. Nor do we need to determine whether the district court's remedy was appropriate under the circumstances of this particular case.
 
 
 18
 The district court observed that "there are practical reasons weighing against the post-trial assessment of whether the statute has been violated; to conduct a capital trial only to strike the death-penalty notice afterwards would be a colossal waste of time, effort and expense for both litigants and the courts." 427 F.Supp.2d at 267.[3] The same practical concerns, however, might be cited in the context of a number of rights for which pretrial dismissal is a permissible remedy. See Digital Equip. Corp., 511 U.S. at 873, 114 S.Ct. 1992. But although "[d]ismissal of the indictment is the proper sanction" for the violation of a variety of rights belonging to defendants — including, for example, the Sixth Amendment right to a speedy trial — "this has not led the Court to conclude that such defendants can pursue interlocutory appeals." Midland Asphalt, 489 U.S. at 801, 109 S.Ct. 1494 (internal quotation marks omitted). While we are not unsympathetic to the district court's practical concern, we do not believe it justifies expanding the narrow class of decisions in criminal cases we have recognized as collateral orders eligible for immediate appellate review.
 
 CONCLUSION
 
 19
 For the foregoing reasons, we dismiss the appeal for lack of jurisdiction.
 
 
 
 Notes:
 
 
 [1]
 On September 21, 2006, we issued an order dismissing McGriff's appeal for lack of jurisdiction, noting that an opinion would follow. We now explain our decision
 
 
 [2]
 Cf. Ferebe, 332 F.3d at 751-52 (Niemeyer, J. dissenting) ("The timeliness of a death penalty notice depends on the `reasonableness' of the time it was provided before trial, measured by how the defendant's preparation was affected, and that question, in turn, depends on the evidence for and against the defendant and the complexity of the case as may be revealed during the course of trial."); United States v. Acosta Martinez, 89 F.Supp.2d 173, 178 (D.P.R.2000) (observing that the purpose of the notice requirement is "to avoid prejudice upon a death eligible defendant because of the government's delay in announcing its intention to seek the death penalty").
 
 
 [3]
 As for the district court's suggestion that "[a] plausible argument could also be made that the defendant should be retried before a non-death qualified jury," 427 F.Supp.2d at 267 n. 12, we note that the Supreme Court has rejected the contention that a "death-qualified" jury lacks impartiality or otherwise creates unfairness to defendants by excluding potential jurors based on their views about the death penaltySee Buchanan v. Kentucky, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987); Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).